# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

Dien Thanh Nguyen,

      Petitioner

v.

Todd Blanche,[1] et al.,

      Respondents

Case No.: 2:26-cv-00186-JAD-BNW

**Order Granting Habeas Petition and Denying as Moot Motion for Temporary Restraining Order**

[ECF Nos. 10, 11]

Petitioner Dien Thanh Nguyen is a Vietnamese citizen who arrived in the United States in 1987 and was ordered removed in 2001. He was released from custody after his removal order became final because Immigration and Customs Enforcement[2] (ICE) agents were unable to secure his removal to Vietnam. But on October 10, 2025, ICE arrested Nguyen, and he has been detained at the Nevada Southern Detention Center ever since.

In January 2026, Nguyen filed a pro se petition for a writ of habeas corpus seeking his release from custody. The court appointed counsel, who filed a first amended habeas petition and a motion for a temporary restraining order seeking Nguyen's immediate release. Nguyen argues that ICE has detained him for too long without showing that he is likely to be removed in the reasonably foreseeable future, that the government violated its own regulations when it re-detained him without following established procedures for revoking his order of supervision, and that ICE's policy of removing noncitizens to a third country without adequate notice or a hearing

---

[1] Todd Blanche has replaced respondent Pamela Bondi as the Acting Attorney General of the United States, so I substitute him as a respondent under Federal Rule of Civil Procedure 25(d).

[2] ICE has had different institutional names throughout the years. To simplify matters, I refer to the agency with the power and authority to remove noncitizens as ICE even if it may have been called something else when Nguyen was ordered removed.

violates his due-process rights.  Nguyen's habeas petition is fully briefed, and I held a hearing on his TRO motion on March 24, 2026.

I grant Nguyen's habeas petition.  Nguyen has been detained for at least six months under his order of removal.  He has shown that there is no good reason to believe that his removal is forthcoming, and the government has failed to present any competent evidence suggesting otherwise.  Nguyen has also shown that ICE failed to follow its own regulations when it arrested him and deprived him of the process that should have accompanied his re-detention.  And Nguyen has demonstrated that ICE's third-country-removal policy violates the Fifth Amendment's due-process clause.

So I order Nguyen's immediate release, subject to the conditions of his preexisting order of supervision.  I also prohibit the respondents from re-detaining Nguyen absent a demonstrable change in circumstances in ICE's ability to remove him.  And I prohibit the respondents from removing Nguyen to an alternative third country without first providing adequate notice and a meaningful opportunity to seek any available relief for that removal.  Finally, because resolving the petition affords Nguyen the relief he seeks, I deny as moot his motion for a temporary restraining order.

**Background**

Petitioner Dien Thanh Nguyen alleges that he came to the United States from Vietnam with his family in 1987.  The family fled because Nguyen's father fought alongside the U.S. military in the Vietnam war and they feared mistreatment because of his alliance with the United States if they stayed.[3]  In 1997 Nguyen was convicted of conspiracy to commit bank fraud, and an immigration judge (IJ) ordered him removed because of that conviction on November 30,

---

[3] ECF No. 10 at 4.

2001.[4]  But at that time Vietnam maintained a policy of refusing to repatriate any citizen who'd left the country before 1995, so ICE released Nguyen from custody on an order of supervision because it could not effectuate his removal to Vietnam.[5]

Nguyen has lived in the United States under that order of supervision for nearly a quarter century.  On September 24, 2025, the Las Vegas Metropolitan Police arrested him for possession or receipt of forged instruments or bills.[6]  Because Nguyen was subject to a final order of removal, ICE lodged an immigration detainer, picked him up from the Clark County Detention Center, and detained him at the Nevada Southern Detention Center on October 10, 2025.[7]  He's been in ICE custody ever since.[8]

About three months after he was detained, Nguyen filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2241, contending that he was being subjected to prolonged detention in violation of the United States Supreme Court's holding in *Zadvydas v. Davis*.[9]  I appointed counsel, who filed an amended petition and TRO motion expanding this case to include claims that the government violated its own regulations when it re-detained Nguyen without properly revoking his order of supervision and that the government's new third-country-removal policy is constitutionally deficient.

---

[4] ECF No. 15-3.

[5] ECF No. 10 at 4.

[6] ECF No. 15-2 at 3.

[7] *Id.*

[8] Nguyen alleges several facts concerning his ailing wife, who requires consistent medical care that Nguyen has been unable to provide while incarcerated.  *See* ECF No. 10 at 5–6.  Those facts do not factor into my legal analysis of this case, so I do not recount them here.

[9] *Zadvydas v. Davis*, 533 U.S. 678 (2001).

**Discussion**

**A.    This court has jurisdiction over Nguyen's claims.**

The constitution makes a writ of habeas corpus "available to every individual detained in the United States."[10]  That writ permits a person who is in custody to challenge the legality of his detention, and the court has the authority to release the petitioner if it determines that he is illegally detained.  The court's habeas jurisdiction encompasses a noncitizen's challenge to his detention under the United States' immigration laws.[11]

The government sees it differently.  It argues that this court is without jurisdiction to consider Nguyen's case because 8 U.S.C. § 1252(g) bars district courts from reviewing the decision to "[c]ommence proceedings, adjudicate cases, or execute removal orders."[12]  But courts have habeas jurisdiction to consider challenges to the lawfulness of immigration-related detention,[13] and "§ 1252(g) does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders."[14]  Rather, § 1252(g) is a "narrow" "discretion-protecting provision"[15] that bars challenges only to the three discrete actions

---

[10] *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art 1, § 9, cl. 2).

[11] *Zadvydas*, 533 U.S. at 687; *Demore v. Kim*, 538 U.S. 510, 517 (2003).

[12] 8 U.S.C. § 1252(g); ECF No. 15 at 2–3.  The government also mentions § 1252(b)(9) in its jurisdictional argument, but it does not argue how that subdivision applies or how it might deprive this court of jurisdiction.  So I do not consider the impact of that provision here.

[13] *See Zadvydas*, 533 U.S. at 687.

[14] *Ibarra-Perez v. United States*, 154 F.4th 989, 997 (9th Cir. 2025).

[15] *Id.* at 996.

enumerated in the statute.[16]  None of those actions are being challenged here, so this court has jurisdiction to adjudicate Nguyen's petition on its merits.

**B.      Nguyen has shown that he is entitled to relief on his prolonged-detention claim.**

> ***1.      The government has authority to detain noncitizens after they have been ordered removed.***

The Immigration and Nationality Act (INA) and its implementing regulations establish a complex set of rules governing the government's authority to arrest, detain, order removed, and deport noncitizens.  8 U.S.C. § 1231(a) governs the detention of noncitizens who have been ordered removed.  It establishes a 90-day "removal period" that begins on "(i) the date the order of removal becomes administratively final, (ii) if the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order," or (iii) the date the noncitizen is released from non-immigration detention.[17]  During that 90-day period, detention is mandatory.[18]  The statute gives the government the ability to detain a noncitizen beyond that 90-day removal period under § 1231(a)(6) if he is inadmissible, removable "as a result of violations of status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy,"[19] or has been determined "to be a risk to the community or

---

[16] *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) ("The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'").

[17] 8 U.S.C. § 1231(a)(1)(B).

[18] 8 U.S.C. § 1231(a)(2)(A).

[19] *Zadvydas*, 533 U.S. at 682.

unlikely to comply with the order of removal."[20]  If those conditions aren't met, the government may release the noncitizen "subject to certain terms of supervision."[21]

### 2.     The Supreme Court has limited the government's statutory authority to indefinitely detain noncitizens awaiting removal.

Section 1231(a)(6) contains no limit on the length of time that a noncitizen may be held after his removal order becomes final.  But in *Zadvydas v. Davis*, the United States Supreme Court rejected the government's contention that noncitizens can be held indefinitely under § 1231(a)(6) because that interpretation "would raise a serious constitutional problem" under the Fifth Amendment's due-process clause.[22]  To avoid those constitutional concerns, the High Court interpreted the statute to permit continued detention only if a noncitizen's removal is "reasonably foreseeable."[23]  It determined that six months of post-removal-period detention is presumptively reasonable.[24]  But after six months, the noncitizen must "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" to show that his prolonged detention exceeds the government's statutory authority and that he should be released from ICE custody.[25]  If the noncitizen meets that burden, "the government must respond with evidence sufficient to rebut that showing."[26]  And as "the period of prior post-removal

---

[20] 8 U.S.C. § 1231(a)(6).

[21] *Zadvydas*, 533 U.S. at 682 (quoting 8 U.S.C. § 1231(a)(6)) (cleaned up).

[22] *Id.* at 690.

[23] *Id.* at 699.

[24] *Id.* at 701.

[25] *Id.*

[26] *Id.*

confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink."[27]

### 3. *Nguyen has shown good reasons to believe that he will not be removed in the reasonably foreseeable future, and the government has not rebutted that showing with any evidence of likely removal.*

As of the date of this order, Nguyen has been detained for six months and five days, barely taking this case out of the presumptively reasonable period of detention established by *Zadvydas*.[28]  So Nguyen bears the initial burden of showing that there are "good reason[s] to believe that there is no significant likelihood of removal in the reasonably foreseeable future."[29]  To meet that burden, Nguyen notes that he has been subject to an order of removal for 25 years, and ICE has been unable to remove him throughout that period.  Nguyen also points to Vietnam's history of refusing to repatriate citizens who left the country before 1995.  At the hearing on Nguyen's TRO motion, his counsel conceded that Vietnam began accepting some repatriations beginning in 2020 but that the process remains "uncertain and protracted."[30]  I find that Nguyen's allegations are sufficient to establish good reason to believe that he is not likely to be removed in the reasonably foreseeable future.

---

[27] *Id.* (cleaned up).

[28] Nguyen contends that his detention period is even longer because he was detained for 90 days after he was ordered removed in 2001, but he provides no evidence to support the length of his detention during that time period.  I don't determine whether some period of his early detention should factor into this analysis because his current detention period exceeds the presumptively reasonable six-month period.

[29] *Zadvydas*, 533 U.S. at 701.

[30] *See* ECF No. 23 (minutes of March 24, 2026, hearing on TRO motion); *Nguyen v. Scott*, 796 F. Supp. 3d 703, 723 (W.D. Wash. 2025) (granting habeas relief for Vietnamese immigrant who fled to the United States following the Vietnam War and finding that removal to Vietnam remains difficult to achieve).

The government does not meaningfully rebut Nguyen's allegations, nor does it provide any evidence showing a significant likelihood of his reasonably foreseeable removal. It merely states without support that ICE "is in the process of obtaining travel documents to effectuate [Nguyen's] removal to Vietnam" and that it "has been communicating with the Vietnamese government."[31] Those conclusory attorney statements do not constitute evidence of any potential efforts ICE is taking to effectuate his removal. The government has failed to provide any evidence showing what those communications with the Vietnamese government have entailed, whether Vietnam has responded to those communications, or whether Vietnam has agreed to accept Nguyen and issue his travel documents.

At the TRO hearing, counsel for the government doubled down, stating (again without support) that he has "been advised that . . . there is movement in the sense that there [are] back-and-forth communications and a willingness by the country of Vietnam to accept him."[32] But counsel could not give any specifics about the content of those conversations or an expected timeline for Nguyen's departure. Government counsel's conclusory, unsupported statements are insufficient to meet the government's burden to present evidence that Nguyen is significantly likely to be removed in the reasonably foreseeable future. So I grant his habeas petition on the ground that his continued detention exceeds the government's statutory authority under *Zadvydas*, and I order his immediate release.[33] I also prohibit the federal respondents from re-

---

[31] ECF No. 13 at 8. The government's primary argument was initially that Nguyen's detention hasn't exceeded the presumptively reasonable six-month detention period established in *Zadvydas*. *See* ECF No. 15 at 5. But we passed that threshold a few days ago, and the government has not submitted any additional argument or evidence suggesting that Nguyen's removal is forthcoming.

[32] ECF No. 23 (March 24, 2026, TRO hearing minutes).

[33] I do not consider Nguyen's separate claim that his prolonged detention violates the Fifth Amendment's due-process clause. In *Zadvydas*, the High Court interpreted § 1231(a)(6) to prohibit prolonged detention to avoid the constitutional concerns raised by a different

detaining Nguyen absent proof of changed circumstances demonstrating that his removal to Vietnam is likely to occur in the reasonably foreseeable future.

**C.      Nguyen has shown that ICE arrested him without following its own re-detention regulations.**

Nguyen also contends that ICE arrested him in a manner that violates its own regulations. To revoke a noncitizen's order of supervision after his release, the government must follow procedures established in the Code of Federal Regulations.  8 U.S.C. § 241.4 dictates that release may be revoked if the noncitizen "violates any condition of release" or when "appropriate to enforce a removal order or to commence removal proceedings against [a noncitizen]."[34]  Section 241.13 permits revocation of release if, "on account of changed circumstances, [ICE] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future."[35]  If ICE decides to revoke release for any of these reasons, it must provide the noncitizen with notice "of the reasons for revocation" and "an initial informal interview promptly after his . . . return to [ICE] custody to afford [him] the opportunity to respond to the reasons for revocation stated in the notification."[36]

Nguyen was released under an order of supervision in the early aughts.  He alleges that when he was taken into ICE custody in 2025, he was not told why his order of supervision was being revoked, was not given an informal interview, and he was not invited to challenge ICE's

---

interpretation.  I follow in the Supreme Court's footsteps and do not reach Nguyen's due-process arguments since he is entitled to the relief he seeks under *Zadvydas*'s statutory interpretation.

[34] 8 C.F.R. § 241.4(l)(2)(iii).

[35] 8 C.F.R. § 241.13(i)(2).

[36] 8 C.F.R. §§ 241.4(l)(1); 241.13(i)(3).

9

reasons for revocation.[37]  The government doesn't respond to any of those allegations.  It instead argues that Nguyen was properly re-detained under "INA 237(a)(2)(A)(iii) due to his conviction for aggravated felony" in 1997.[38]  But that aggravated felony was the reason for his removal order back in 2001, and the government doesn't explain how that decades-old felony justifies his 2025 arrest or permits the government to ignore its own re-detention regulations.  Though the government has the power to re-detain a noncitizen to effectuate removal, its regulations require that he be given some notice about why his order of supervision is being revoked and an opportunity to raise objections to those reasons.  The government appears to concede that none of those things happened here.

"It is a well-known maxim that agencies must comply with their own regulations."[39] And, as other district courts have found, ICE's re-detention regulations were intended "to provide due process protections to noncitizens following the removal period as they are considered for continued detention, release, and then possible revocation of release."[40]  It's undisputed that those regulations were not followed here.  So I join the growing number of courts that have concluded that the government's failure to abide by its own regulations when arresting a noncitizen warrants his release.  I thus grant Nguyen's habeas petition on this ground, too, and I order his release on the conditions in his preexisting order of supervision.

---

[37] ECF No. 10 at 18.

[38] ECF No. 13 at 9; ECF No. 15 at 6.

[39] *United States v. Ramos*, 623 F.3d 672, 683 (9th Cir. 2010).

[40] *See, e.g.*, *Ghafouri v. Noem*, 2025 WL 3085726, at *4 (S.D. Cal. Nov. 4, 2025) (quoting *Santamaria Orellana v. Baker*, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025)).

**D.      Nguyen has shown the government's third-country-removal procedures violate due process.**

*1.      The government's policy provides notice of third-country removal on a truncated timeline and allows screening for fear-based claims if the detainee affirmatively raises them.*

Once it has been determined that a noncitizen is to be removed from the United States, 8 U.S.C. § 1231(b) governs where he will be removed to.  The first choice is a country "to which the [noncitizen] wants to be removed."[41]  If deportation to that country isn't possible, the immigration judge has a list of other options, including the country from which the noncitizen entered the United States, the noncitizen's last country of residence, the country in which the noncitizen was born, and others.[42]  If all of those enumerated country options are "impracticable, inadvisable, or impossible," the noncitizen may be removed to "another country whose government will accept" him.[43]  Removal to a country not listed on a noncitizen's removal order is commonly referred to as a third-country removal.

There is one statutory restriction on third-party removal: "the Attorney General may not remove [a noncitizen] to a country if the Attorney General decides that the [noncitizen's] life or freedom would be threatened in that country because of the [noncitizen's] race, religion, nationality, membership in a particular social group, or political opinion."[44]  And the United Nations Convention Against Torture (CAT), ratified by the United States through the Foreign Affairs Reform and Restructuring Act, entitles noncitizens to seek asylum or withholding of removal to a country in which they are likely to be persecuted or tortured.  Normally, a

---

[41] 8 U.S.C. § 1231(b)(2)(A).

[42] 8 U.S.C. § 1231(b)(2)(E)(i–vi).

[43] 8 U.S.C. § 1231(b)(2)(E)(vii).

[44] 8 U.S.C. § 1231(b)(3)(A).

noncitizen raises CAT protections at or directly following his initial removal proceedings.  It appears that no immigration statute or regulation addresses how a noncitizen may raise CAT challenges after ICE determines that deportation to the country on his removal order is impracticable and instead chooses to pursue a third-country removal.

In early 2025, ICE tried to fill that statutory gap.  It issued a policy explaining that, as long as "the United States has received diplomatic assurances from the country of removal that [noncitizens] removed from the United States will not be persecuted or tortured" and those assurances are deemed "credible" by the Department of State, ICE need not give any notice or opportunity to be heard to noncitizens who are being removed to that country.[45]  In all other cases, ICE must serve a notice of removal on the noncitizen that informs him of the intended country of removal.[46]  ICE "will generally wait at least 24 hours following service of the notice of removal before effectuating removal," but the policy allows removal on a mere six hours' notice "as long as the [noncitizen] is provided reasonable means and opportunity to speak with an attorney prior to removal."[47]

After the notice of removal is served, the ICE officer "will not affirmatively ask whether the [noncitizen] is afraid of being removed" to that country, but if the noncitizen independently and "affirmatively state[s]" a fear of removal, ICE's Enforcement and Removal Operations (ERO) division "will refer the case to U.S. Citizenship and Immigration Services (USCIS) for a screening for eligibility for protection" under CAT.[48]  If (through an unidentified process) USCIS determines that the noncitizen has not shown that he "would more likely than not be

---

[45] ECF No. 10-5.

[46] Id.

[47] Id.

[48] Id.

persecuted on a statutorily protected ground or tortured in the country of removal," the noncitizen will be removed.[49]  If USCIS determines that the noncitizen "has met this standard," ICE will file a motion to reopen immigration proceedings for the "sole purpose of determining eligibility for protection under" 8 U.S.C. § 1231(b)(3) and CAT for the country of removal.[50]

> **2.    *ICE's third-country policy violates due process, so any attempt to remove Nguyen to a third country must be preceded by notice and a meaningful opportunity to be heard.***

Nguyen contends that ICE's third-country-removal policy does not provide adequate notice or an opportunity to be heard, thus violating the Fifth Amendment's due-process clause.[51]  "The Due Process clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent."[52]  The "fundamental features of due process" are notice and an opportunity to be heard.[53]

The Ninth Circuit has not expressly ruled on what process is due to noncitizens faced with third-country removal.  But it has come close.  In *Andriasian v. INS*, the Ninth Circuit panel held that immigration officials could not add a new country to the petitioner's removal order without proper notice.[54]  It explained that "[f]ailing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates both INS regulations and the

---

[49] *Id.*

[50] *Id.*

[51] ECF No. 10 at 19–21.  Nguyen also challenges the policy under the Administrative Procedure Act.  In that claim, he essentially argues that the government violated the APA by using a procedure that violates due process. *See id.* at 20.  Because Nguyen's due-process claim on its own justifies release, I do not separately consider whether the government has violated the APA.

[52] *Zadvydas*, 533 U.S. at 693 (cleaned up).

[53] *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1205 (9th Cir. 2022).

[54] *Andriasian v. INS*, 180 F.3d 1033, 1041 (9th Cir. 1999).

constitutional right to due process."[55]  And in the unpublished case of *Najjar v. Lynch*, another Ninth Circuit panel cited *Andriasian* for the proposition that, "[i]n the context of country-of-removal designations, last minute orders of removal to a country may violate due process if a[] [noncitizen] was not provided an opportunity to address his fear of persecution in that country."[56]

District courts have extrapolated these holdings to find that adequate due process requires ICE to (1) provide notice, (2) "ask the noncitizen whether he or she fears persecution or harm upon removal to the designated country and memorialize in writing the citizen's response," (3) "inform the noncitizen that he or she may seek asylum, withholding, and relief under the CAT by filing a motion to reopen with the immigration courts" if the answer to that question is yes, and (4) provide "adequate time to prepare and file a motion to reopen[.]"[57]  Said more succinctly, "[a] noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation."[58]  District courts across the country have also routinely found that ICE's third-country policy doesn't comport with due process.[59]

---

[55] *Id.*

[56] *Najjar v. Lynch*, 630 F. App'x 724, 724 (9th Cir. 2016) (unpublished) (cleaned up).

[57] *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1019–20 (W.D. Wash. 2019); *see also, e.g.*, *Nguyen*, 796 F. Supp. 3d at 727.

[58] *Aden*, 409 F. Supp. 3d at 1009 (citing *Mathews v. Eldridge*, 424 U.S. 319, 348–49 (1976); *Kossov v. INS*, 132 F.3d 405, 408 (7th Cir. 1998)); *see also Kumar v. Wamsley*, 2025 WL 3204724, at *5 (W.D. Wash. Nov. 17, 2025) (finding that this due-process requirement "flows directly from Ninth Circuit precedent" requiring notice of a noncitizen's right to apply for asylum or withholding of removal to a previously undisclosed country).

[59] *See, e.g.*, *Nguyen*, 796 F. Supp. 3d at 728 ("This policy contravenes Ninth Circuit law . . . . It would be impossible to comply both with Ninth Circuit precedent and this policy."); *Vu v. Noem*, 2025 WL 3114341, at *9 (E.D. Cal. Nov. 6, 2025) (collecting cases); *D.V.D. v. DHS*, 2025 WL 1142968 (D. Mass. Feb. 25, 2026).

It is abundantly clear that the first third-country-removal option—immediate deportation without notice so long as the accepting country gives generalized assurances that it will not torture anyone—doesn't provide adequate due process to a noncitizen who may be removed to that country. Notice, let alone an opportunity to be heard, is not available to a noncitizen in that situation. And ICE's second scheme doesn't fare much better. Though the policy requires notice, it may be given in as little as six hours before the noncitizen's removal, and that notice explicitly does not advise the noncitizen that he may seek withholding, deferral, asylum, or other protections if he fears removal to that third country. Even if the noncitizen knows to affirmatively state a fear of removal, the policy does not afford him a hearing of any kind unless a USCIS officer determines, through an unexplained process, that the noncitizen would be likely to prove that any of those protections applies. So this process does not comport with the fundamental requirements of due process.

> **3.      *Nguyen has standing to challenge the third-country-removal policy.***

The government does not respond to the merits of Nguyen's third-country-removal claim. It instead insists that the respondents "have no intention nor plans to remove [Nguyen] to a third country" because they "have been actively working to remove [him] to Vietnam."[60] Though the government doesn't frame it as such, I construe this as a lack-of-standing argument. But a petitioner seeking prospective injunctive relief may show he has standing to pursue that relief if "he is realistically threatened by a repetition of the violation."[61] If a plaintiff's potential injury stems from a written policy or a pattern of officially sanctioned behavior, he need not have

---

[60] ECF No. 15 at 6.

[61] *Melendres v. Arpaio*, 695 F.3d 990, 997 (9th Cir. 2012).

already suffered a harm in order to seek prospective injunctive relief.[62]  Rather, "the plaintiff must demonstrate that he has suffered or is threatened with a concrete and particularized legal harm, coupled with a sufficient likelihood that he will again be wronged in a similar way."[63] That an injury is "directly traceable to a written policy [suggests that] there is an implicit likelihood of its repetition in the immediate future."[64]

Nguyen has shown that he is likely to be harmed by ICE's third-country policy.  The government has failed to show any active attempts to remove Nguyen to Vietnam.  If, for whatever reason, Vietnam ceases to be a viable removal option, the government's policy allows ICE to remove Nguyen to a third country with little or no notice and no meaningful opportunity to challenge that removal.  Because Nguyen is subject to ICE's removal discretion, and given that ICE has endorsed a policy for third-country removal that could affect any noncitizen who faces hurdles being removed to his home country, it is entirely likely that Nguyen could be subject to a third-country removal without any opportunity to raise fear-based challenges to that removal.  And because of the policy's emphasis on speedy removal without process, it's likely that a noncitizen like Nguyen could be removed to a third country before he has the chance to raise his constitutional concerns through a habeas petition.  So I join the growing number of courts finding that a noncitizen awaiting removal has standing to challenge the government's

---

[62] *See id.* at 998 ("First, a plaintiff may show that the defendant had, at the time of the injury, a written policy, and that the injury stems from that policy.  Second, the plaintiff must demonstrate that the harm is part of a pattern of officially sanctioned behavior, violative of the plaintiff's federal rights." (cleaned up)).

[63] *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007), *abrogated on other grounds as recognized in Healy v. Milliman*, 164 F.4th 701 (9th Cir. 2026).

[64] *Id.* at 986.

16

third-country-removal policy.[65]  And because that policy violates due process, I prohibit the federal respondents from rearresting Nguyen with the intention of removing him to a third country unless they comply with the notice-and-hearing requirements established above.

### Conclusion

IT IS THEREFORE ORDERED that petitioner Dien Thanh Nguyen's petition for a writ of habeas corpus under 28 U.S.C. § 2241 **[ECF No. 10] is GRANTED**.  Petitioner **Dien Thanh Nguyen must be released from detention immediately, subject to the conditions of his preexisting order of supervision.**

IT IS FURTHER ORDERED that respondents must file and serve on defense counsel:

(1) notice of the date, time, and location of Nguyen's release at least 24 hours before the release is set to occur, and

(2) notice that Nguyen's release was effectuated within three days of this order.

IT IS FURTHER ORDERED that **the federal respondents are enjoined from re-detaining Dien Thanh Nguyen absent proof of changed circumstances making his removal to Vietnam reasonably foreseeable.**

IT IS FURTHER ORDERED that the **federal respondents are enjoined from removing Dien Thanh Nguyen to any country not listed on his removal order unless it first complies with the notice-and-hearing requirements detailed in this order**.

IT IS FURTHER ORDERED that counsel for respondents is directed to immediately provide notice of this order to the restrained parties they represent.

---

[65] *See, e.g.*, *Esmail v. Noem*, 2025 WL 3030589, at *5 (C.D. Cal. Sept. 26, 2025); *Elshourbagy v. Bondi*, 2025 WL 3718993, at *6 (W.D. Wash. Dec. 23, 2025); *Nguyen*, 796 F. Supp. at 736.

IT IS FURTHER ORDERED that Nguyen's motion for a temporary restraining order **[ECF No. 11] is DENIED** as moot.

The Clerk of Court is directed to SEND a copy of this order to the Warden of Nevada Southern Detention Center in Pahrump, Nevada, and CLOSE THIS CASE.

_____
U.S. District Judge Jennifer A. Dorsey
April 15, 2026

18